UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**AMANDA ISABEL FANEGO CARDOSO,**

**Petitioner,**

v.

**KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security, PAMELA BONDI, in her official capacity as Attorney General of the United States; TODD LYONS, in his official capacity as Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement; MARY DE ANDA-YBARRA, in her official capacity as Field Office Director of the El Paso Field Office of U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations; DORA CASTRO, in her official capacity as Warden of the Otero County Processing Center,**

**Respondents.**

Case No.  2:25-CV-00968-WJ-JMR

**<u>EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

Petitioner Amanda Isabel Fanego Cardoso, through her undersigned counsel, respectfully moves this Court for a Temporary Restraining Order (TRO) to enjoin Respondents from continuing her unlawful detention and to order her immediate release. In support of this motion, Petitioner states as follows:

## I. BACKGROUND

1. Petitioner, a 21-year-old Cuban national, was paroled into the United States on December 23, 2023, under Section 212(d)(5) of the Immigration and Nationality Act (INA).

2. Petitioner has a pending application for adjustment of status under the Cuban Adjustment Act (CAA) and meets all statutory prerequisites for CAA adjustment.

3. Despite her lawful presence and pending application, Petitioner has been detained by ICE since September 2025.

4. Petitioner is currently detained at the Otero County Processing Center in Chaparral, New Mexico.

5. Petitioner is also **four months pregnant** and faces grave physical and emotional harm from continued detention.

6. The Department of Homeland Security (DHS) has never issued any written or individualized notice terminating that parole, nor provided any factual or legal basis for its revocation.

7. Despite her continued lawful parole status and her pending adjustment of status under the Cuban Adjustment Act (filed March 7, 2025; Receipt No. MSC2590415920), Petitioner was subsequently arrested and detained under 8 U.S.C. § 1225(b).

8. Petitioner was denied bond on September 16, 2025, under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), a decision now under widespread judicial challenge for contravening decades of agency practice and statutory construction.

## II. JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C. §§ 2241, 1331, 1361, and the Suspension Clause.

10. Venue lies in this District because Petitioner is detained at Otero County Processing Center within the District of New Mexico.

## III. STATEMENT OF FACTS

11. Petitioner was paroled and issued an NTA on December 23, 2023.

12. Under 8 C.F.R. § 212.5(e)(2)(i), parole may be terminated only upon written notice stating the reasons for revocation, and only after an individualized determination that the purposes of parole have been served or are no longer warranted.

13. Respondents have not issued any such termination notice, and Petitioner never received an opportunity to respond, appeal, or contest termination.

14. DHS instead unilaterally reclassified Petitioner as subject to mandatory detention under § 1225(b)—a statutory provision reserved for individuals seeking initial admission at the border, not for parolees already lawfully present under DHS authorization.

15. Petitioner has maintained good standing since her parole grant, has no disqualifying criminal record, and has filed a Cuban Adjustment Act adjustment application pending adjudication.

16. Petitioner was arrested in Orlando, Florida, later transferred to Chaparral, New Mexico, and remains detained without a bond hearing despite her lawful parole status.

17. On October 06, 2025, Petitioner filed a *Petition for Writ of Habeas Corpus* [CM/ECF No. 2:25-cv-00968-WJ-JMR] and a *Petition for Writ of Mandamus* [CM/ECF No. 2:25-cv-00968-WJ-JMR], both of which are attached hereto as **Exhibit A**.

### IV. LEGAL STANDARD

18. Under *Winter v. NRDC*, 555 U.S. 7 (2008), a TRO or preliminary injunction may issue upon a showing that the movant:

    a.  is likely to succeed on the merits;

    b.  is likely to suffer irreparable harm absent relief;

    c.  that the balance of equities tips in her favor; and

    d.  that the injunction is in the public interest.

*Id.* at 20. Petitioner can satisfy each element necessary for a preliminary injunction to issue in her favor. Accordingly, Petitioner requests that this Court do as other courts have done in the immigration detention context: order Petitioner's immediate release. *See, e.g., Cherynykh v. Valez*, CV 16-2184-RGK, 2017 WL 3000013 (C.D. Cal. May 22, 2017) (granting immigrant detainee's motion for preliminary injunction ordering her release pending disposition of habeas corpus petition); *Seretse-Khama v. Ashcroft,* 215 F. Supp. 2d 37, 54 (D. D. C. 2002) (ordering preliminary injunction releasing immigration detainee).

### V. ARGUMENT

**A. Petitioner is likely to succeed on the merits**

19. Petitioner is likely to succeed on the merits of her claims, as her detention violates statutory and constitutional protections. The detention is not reasonably related to any legitimate governmental purpose, and the procedural deficiencies in her case are clear.

**1. Due Process Violations**

20. Petitioner has and continues to be denied procedural and substantive due process to which she is entitled.

21. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

22. Petitioner is entitled to due process. *See Hernandez Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) ("due process 'applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent'"). Petitioner is entitled to notice and a meaningful opportunity to be heard, which did not occur prior to the government implicitly and improperly terminating Petitioner's parole. *Id.* at 38 ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard.").

23. **1st Due Process Violation:** The government's failure to follow procedural requirements for parole termination constitutes a due process violation, rendering the detention ultra vires and unconstitutional. Petitioner has a protected liberty interest in the fair adjudication of her adjustment application, and her detention without individualized findings of necessity is arbitrary and capricious.

24. The government's conduct contravenes Petitioner's rights under the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause.

25. ***Parole and Notice to Appear (NTA) Issuance***. Petitioner's parole and NTA were issued contemporaneously, and no lawful revocation of her parole has occurred. Under § 212.5(e)(2), parole remains <u>valid</u> absent written termination, which has not been provided.

26. ***Revocation of Parole Requires Notice***. Courts have recognized that parole cannot be implicitly revoked without notice. In *Matter of Armentero*, 340 F. Supp. 3d 1311 (C.D. Cal. 2018), the court held that revocation requires individualized justification and written notice. Similarly, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court emphasized that detention must bear a reasonable relation to its statutory purpose.

27. ***Misplaced Reliance on § 1225(b) instead of § 1226(a)***. Because Petitioner remains in lawful parole status, the government's reliance on § 1225(b)'s mandatory detention provision is misplaced. The correct custody framework is § 1226(a), which provides for discretionary release on bond or parole pending adjudication.

28. Specifically, Petitioner's detention under § 1225 violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to 8 U.S.C. § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

29. The government's questionable legal interpretation is at odds with the statutory framework and upends decades of practice applying § 1226(a) to people like Petitioner.

30. As detailed in Petitioner's Petition for Writ of Habeas Corpus, attached hereto as **Exhibit A**, courts are rejecting the government's new interpretation because it conflicts with the

INA. The plain language of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

31. The government's conduct contravenes Petitioner's rights under the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause.

32. **2nd Due Process Violation:** *The government is depriving Petitioner due process opportunity to pursue her green card application under the CAA.*

33. The CAA authorizes Cuban nationals who have been physically present in the United States for at least one year, and who have been admitted or paroled, to apply for adjustment to permanent residence.

34. Petitioner qualifies for and has already begun the process of exercising her right to seek a Green Card under the Cuban Adjustment Act.

35. Petitioner meets all statutory prerequisites for CAA adjustment and is statutorily eligible.

36. Petitioner's continued detention renders it impossible to continue her path to obtain legal status to which she is entitled.

37. The government is violating Petitioner's right to pursue adjustment of her status under the CAA by placing her in expedited removal under § 1225.

38. Expedited removal has the practical effect of stripping Petitioner of her *right* to seek a Green Card. Again, this is Petitioner's *right*.

39. Ultimately, the government's continued detention of Petitioner without a bond redetermination hearing to determine whether she is a flight risk or danger to others (she is neither) violates her right to due process.

40. **3rd Due Process Violation.** Plaintiff is pregnant. Continued detention poses a severe risk to her present and future health and certainly that of her unborn baby. The Eighth

Amendment, and by extension, the Due Process clause of the Fifth Amendment applicable to Petitioner, requires that "inmates be furnished with the basic human needs, one of which is reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (internal citation omitted). The Eighth Amendment protects prisoners from "unreasonable risks of serious damage to [their] future health" even if they have not yet suffered any ill effects. *Helling*, 509 U.S. at 33. A detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner. *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1049 (E.D. Mich. 2020) (citing *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004) (holding that civil detainees are entitled to superior conditions of confinement than prisoners and pretrial detainees).

41. "'[A] remedy for unsafe conditions need not await a tragic event,' and the plaintiff need not allege present harm to succeed on unconstitutional conditions claim." *Awshana*, 453 F. Supp. 3d at 1049 (citing *Helling*, 509 U.S. at 33).

42. Petitioner is in a critical phase of pregnancy and her continued detention, without access to the resources she needs, amounts to punishment and runs afoul of Due Process as she is being deprived of the care and monitoring that she requires.

43. Petitioner's current confinement subjects her to conditions that are constitutionally intolerable and medically dangerous, particularly given her pregnancy. She has been deprived of essential prenatal care, including timely obstetric examinations, access to prescribed prenatal vitamins, routine ultrasounds, and monitoring for gestational complications such as preeclampsia and anemia.

44. Such deprivation of necessary medical care constitutes deliberate indifference to serious medical needs in violation of the Fifth Amendment's Due Process Clause. See *Awshana v.*

*Adducci*, 453 F. Supp. 3d 1043, 1053–54 (E.D. Mich. 2020) (recognizing that the government's failure to provide adequate medical care and protection from known health risks to immigration detainees violated due process).

45. Without immediate judicial intervention, Petitioner faces ongoing harm that is both irreparable and imminent, including miscarriage, serious injury to her health, and permanent emotional trauma — all of which cannot be remedied post-hoc through monetary or declaratory relief.

**B. Irreparable harm is undeniable and is likely to be suffered unless the preliminary injunction issues**

46. Petitioner need only show that she is "*likely* to suffer irreparable harm in the absence of preliminary relief". *Winter*, 555 U.S. at 20.

47. Petitioner easily demonstrates that she is likely to suffer irreparable harm based on any of the Due Process violations above. *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury."). The harm Petitioner will suffer absent relief is grave.

48. Irreparable harm is present when one like Petitioner is "likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

49. Petitioner will likely suffer immediate irreparable harm if she remains in immigration custody. She requires proper prenatal care during her pregnancy, which she cannot adequately receive while detained. Petitioner's health and that of her unborn baby are at severe risk.

50. Without an injunction, irreparable harm will result in a disruption of Petitioner's medical care and separation from family. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (describing instances of irreparable harm including "subpar medical and psychiatric care").

51. Notably, Under ICE Directive 11032.4, effective July 1 2021, ICE policy requires that individuals known to be pregnant, postpartum or nursing shall generally not be detained for administrative immigration violations, and if detained must receive appropriate prenatal and postnatal care, be housed in facilities suitable for their medical and mental health needs and be subject to weekly re-evaluations of the need for detention.

**C. The Balance of Equities tilt sharply in Petitioner's favor, and the Public Interest favors entry of injunctive relief**

52. When, as here, the defendants are government officials sued in their official capacities, the balancing of equity and the public interest factors merge. *Rocky Mt. Gun Owners v. Polis*, 121 F.4th 96, 112 (10th Cir. 2024).

53. The balance of equities and public interest both strongly favor entry of an injunction in Petitioner's favor.

54. As to the balance of equities, Petitioner can demonstrate that the threatened injury outweighs the harm to Respondents. *Core Progression Franchise Ltd. Liab. Co. v. O'Hare*, No. 21-1151, 2022 U.S. App. LEXIS 14845, at *4-5 (10th Cir. May 31, 2022).

55. Respondents have violated Petitioner's due process rights in many ways. Petitioner stands to lose her *right* to pursue adjustment of her status under the CAA. She has been placed in expedited removal contrary to the plain language of the INA. Her indefinite detention violates due process, and the Respondents have disregarded the procedural requirements for parole termination. Petitioner's health and that of her unborn baby stand hang in the balance as Petitioner is not receiving the prenatal care that she needs.

56. It is difficult to fathom what "harm" Respondents purport to suffer by entry of an injunction. The government cannot suffer any "harm" "in any legally cognizable sense by being enjoined from constitutional violations" which is the case here. *Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

57. Respondents have no legitimate interest in acting in a manner contrary to the plain language of the INA.

58. Petitioner's detention serves no public safety interest, and her release would allow her to continue her lawful pursuit of adjustment of status under the CAA—to which she is entitled and already pursuing. *See Hernandez*, 872 F. 3d at 996 (finding balance of equities favor plaintiff where, among other things, plaintiff faced considerable harm to constitutional rights in the absence of an injunction).

59. In addition, granting an injunction here similarly favors the <u>public interest</u>. "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez*, 872 F.3d at 996.

60. "[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

61. Here, Petitioner alleges that the government is *not* abiding by federal law – the INA – and the public interest favors the adjudication of Petitioner's claim and weighs in favor of granting injunctive relief.

62. The relief sought here advances the public interest from a public health perspective. The government has an interest in maintaining a safe environment in the detention center and

removing an individual whose health and that of the unborn are at risk. One less detainee, who poses no threat to anyone, advances the government's interests, as does preventing complications from a pregnancy.

63. Further, it is clearly against public policy and the public's interest to separate members of an immediate family. Indeed, a purpose behind immigration law is to preserve family unity. *INS v. Errico*, 385 U.S. 214, 219 (1966). Petitioner should be with her family during her pregnancy and during her pursuit of adjustment of status under the CAA.

64. Construed together, the balance of equities and public interest strongly support injunctive relief given the multiple violations of Petitioner's due process rights and her health and htat of the unborn baby.

65. ***No bond should be required***. Finally, no bond should be required under these circumstances. "Courts in the Tenth Circuit 'have 'wide discretion under Rule 65(c) in determining whether to require security,' and may, therefore, impose no bond requirement. *ETP Rio Rancho Park, LLC v. Grisham*, 517 F. Supp. 3d 1177, 1215 (D.N.M. 2021).

66. Under these circumstances, where Petitioner's detention is egregious and violates due process, no bond should be required.

## VI. REQUESTED RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. Issue a Temporary Restraining Order enjoining Respondents from continuing Petitioner's detention and ordering her immediate release;

2. Prohibit Petitioner's removal from the United States and transfer outside the District of New Mexico during the pendency of this action;

3. Enjoin Respondents from re-detaining Petitioner absent further order of this Court and a showing of lawful basis;

4. Grant such other and further relief as the Court deems just and proper.

DATED:        October 20, 2025

BADAWI LAW

_____
**SAM Y. BADAWI, ESQUIRE**
Florida Bar Number: 120218
Primary: Sam@badawilaw.com
Secondary: Admin@badawilaw.com
14505 University Point Place
Tampa, Florida 33613
Phone: (813) 508-8808
Fax: (813) 644-7152
Attorney for Petitioner

**Verification by Someone Acting on Petitioner's Behalf Pursuant to 28 U.S.C. § 2242**

I am submitting this verification on behalf of Petitioner because I am one of Petitioner's attorneys. I have discussed with Petitioner the events described in this Petition. On the basis of those discussions, I hereby verify that the statements made in this Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: October 20, 2025                    _/s/ Sam Y. Badawi_
                                           Sam Badawi

**CERTIFICATE OF SERVICE**

I hereby certify that on October 20, 2025, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

                                           _/s/ Sam Y. Badawi_
                                           Sam Badawi

12