## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**AMANDA ISABEL FANEGO CARDOSO,**

      Petitioner,

v.                                                    Case No. 2:25-cv-00968-WJ-JMR

**KRISTI NOEM,** Secretary of the
U.S. Department of Homeland Security;
**PAM BONDI,**
Attorney General of the United States;
**TODD M. LYONS,** Acting Director and Senior Official
Performing the Duties of the Director of
U.S. Immigration and Customs Enforcement;
**MARY DE ANDA-YBARRA,** Director,
El Paso Field Office, U.S. Immigration
and Customs Enforcement; and
**DORA CASTRO,** Warden,
Otero County Processing Center;
in their official capacities,

      Respondents.

## <u>MEMORANDUM OPINION AND ORDER DENYING PETITIONS FOR WRIT OF HABEAS CORPUS AND WRIT OF MANDAMUS</u>

THIS MATTER comes before the Court upon Petitioner Amanda Isabel Fanego Cardoso's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("the Petition") **[Doc. 1]**, and Petition for Writ of Mandamus under 28 U.S.C. § 1361 and 5 U.S.C. § 706(1). **[Docs. 9, 11]**. Respondents U.S. Immigration and Customs Enforcement (ICE) and the Department of Homeland Security (DHS) moved to dismiss the petitions on December 23, 2025, **[Doc. 17]**, Petitioner filed a response, **[Doc. 18]**, and Respondents filed a reply **[Doc. 20]**. Also before the court is Petitioner's Motion to Expedite Briefing, Hearing, and Decision on Preliminary Injunction and Habeas Petition ("Motion to Expedite"). **[Doc. 19]**.

For the reasons that follow, the Court determines that the Petitions for Writ of Habeas Corpus and Writ of Mandamus **[Docs. 1, 9, 11]** must be dismissed.

## BACKGROUND

Petitioner, a Cuban national, entered the United States without valid entry documents in 2023 and applied for admission in December 2023.  **[Docs. 1 at 8, ¶¶ 31–32; 1-1]**.  At that time, she was served with a Notice to Appear before an immigration judge and granted discretionary parole under section 212(d)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(d)(5), until December 21, 2025.  **[*See* Doc. 1, ¶ 32; Doc. 17-2]**.  In March 2025, Petitioner applied for adjustment of status under the Cuban Adjustment Act (CAA) with the U.S. Citizenship and Immigration Services (USCIS).

In September 2025, local law enforcement arrested Petitioner at a shopping mall in Florida, and charged her with grand theft, a felony under Florida law.  Petitioner was then booked into local custody and was transferred into federal immigration custody in early September 2025.  **[Doc. 1, at 3, ¶¶ 5, 39, 40–41]**.  An immigration judge denied a custody redetermination on September 16, asserting lack of jurisdiction because Petitioner "is charged as being an 'arriving alien'" and citing "Matter of Arguelles."[1] **[Doc. 1-5]**.  Petitioner was subsequently transferred to ICE custody at Otero County Processing Center in Chapparal, New Mexico, where, according to the present record, she remains detained.  **[Docs. 1, at 9, ¶ 41; 20-1**

---

[1]     The immigration court order's citation to "Matter of Arguelles" appears to refer to *Matter of Arguelles*, 22 I&N Dec. 811 (BIA 1999), a 1999 BIA decision that concerns the scope of voluntary departure as a form of relief under the INA.  It is possible that the immigration court intended to cite instead to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), a BIA decision issued on September 5, 2025, that eliminated immigration judges' authority to consider bond requests and grant bond to noncitizens present in the United States who entered without inspection. *See id.* at 229.

Petitioner challenges her detention on the ground that she is not properly classified as an arriving alien under 8 U.S.C. Whether the immigration judge denied bond on the correct basis, however, does not alter the fact that Petitioner was not entitled to the opportunity for bond under the mandatory detention statute.  *See* 8 U.S.C. § 1226(c)(1).

¶ **5**].

Petitioner's counsel filed the instant Petition in October 2025. The Petition alleges Petitioner's apprehension and continued immigration detention infringe on her procedural and substantive due process rights under the Fifth Amendment and violate the Administrative Procedure Act and the *Accardi* doctrine. The Petition also asserts that Petitioner's "arrest" by ICE violated the Fourth Amendment. **[Doc. 1 at 15–26]**. In addition, the Petition alleges that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b) because she received parole under 8 U.S.C. § 1182(d)(5) and has a pending adjustment of status application under the CAA. Petitioner seeks her immediate release from ICE custody, and, in the alternative, a "constitutionally adequate individualized custody determination at which the government bears the burden to justify continued detention." **[*Id.* at 26–27]**. Petitioner also asks this Court to compel USCIS to adjudicate Petitioner's application for adjustment of status. **[Doc. 11 at 10– 11]**.

### A. Developments in Petitioner's Immigration Proceedings

While the Petition remains the operative pleading in this case, since its filing, the Court has been advised of material developments in Petitioner's removal proceedings and her application for adjustment of status under the CAA. On November 25, 2025, USCIS issued a Notice of Decision, finding that Petitioner was ineligible for relief under the CAA and denying Petitioner's application. As factors weighing against the discretionary grant of relief, the agency cited Petitioner's arrest and pending felony theft charges, a lack of family ties in the United States, a short length of residence in the United States and the pending removal proceedings before the Executive Office of Immigration Review. **[Doc. 19-2, at 2]**. The Notice also terminated Petitioner's parole under INA§ 212(d)(5) and any advanced parole received based upon the filing of Petitioner's adjustment of status application. **[Doc. 19-2 at 3, 4]**. The Notice advised that review of the decision is

available through the filing of a motion to reopen or reconsider.  **[*Id.* at 3]**

On January 5, 2025, an immigration judge entered an order pretermitting a Form I-589 application[2] and finding Petitioner inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).  The immigration judge also ordered Petitioner's removal to Ecuador, a country where she is not a citizen and has no ties.  **[Doc. 19-1]**.

## DISCUSSION

The basic purpose of a § 2241 habeas proceeding is to permit a person in custody to attack the legality of custody, and the "traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n,* 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).  A habeas petition therefore, generally, challenges "the fact or duration of" confinement.  *Preiser*, 411 U.S. at 498.  On the other hand, challenges to the conditions of confinement must be brought through a civil rights action, either under 42 U.S.C. § 1983 or *Bivens*.  *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012); *Rael v. Williams*, 223 F.3d 1153, 1154 (10th Cir. 2000); *Essien v. Barr*, 457 F. Supp. 3d 1008, 1013 (D. Colo. 2020).  Although facts concerning conditions of confinement may support a claim of unconstitutional detention, claims directed solely at the conditions of confinement must be brought through a civil rights action, as opposed to a petition for habeas corpus.  *See Palma-Salazar*, 677 F.3d at 1035.

## I.    Subject Matter Jurisdiction Under 8 U.S.C. § 2241

District courts are authorized to entertain petitions for a writ of habeas corpus challenging the lawfulness of detention under the federal immigration laws and the U.S. Constitution.  8

---

[2]    The Court notes that apart from the immigration court order, the record does not otherwise discuss the filing of a Form I-589, which is the application for asylum, not adjustment of status.  *See* USCIS, Form I-589, Application for Asylum and for Withholding of Removal, https://www.uscis.gov/sites/default/files/document/forms/i-589.pdf.

U.S.C. § 2241; *Rasul v. Bush*, 542 U.S. 466, 483 (2004).

Respondents assert that the Court's jurisdiction over Petitioner's habeas claims is foreclosed by § 1226(e). **[Doc. 17 at 13–14]**. Section 1226(e) bars review of the Attorney General's discretionary judgment regarding the application of § 1226. 8 U.S.C. § 1226(e). However, in Respondents' own terms, the application of § 1226(c) is not discretionary; it is mandatory. **[Doc. 17 at 13]**; *see Olmos v. Holder*, 780 F.3d 1313, 1316 (10th Cir. 2015). Further, without clear congressional language dictating otherwise, under Supreme Court precedent, § 1226(e) cannot foreclose review of habeas claims. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); *accord Sierra v. INS*, 258 F.3d 1213, 1218 (10th Cir. 2001). Section 1226 contains no language clearly foreclosing habeas challenges to an individual's detention under its framework. Therefore, § 1226(e) does not preclude judicial review of Petitioner's habeas claims regarding mandatory detention under § 1226(c).

The Court notes that the final removal order issued in Petitioner's removal proceedings could present a conceivable obstacle to the Court's jurisdiction over the Petition.[3] A district court's purview does not extend to legal and factual questions "arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9); *see also id.* § 1252(a)(5) (stating that a petition for review filed in a court of appeals shall be the "sole and exclusive means for judicial review of an order of removal"). However, the existence of a final removal order does not alone strip a district court of jurisdiction over a habeas petition challenging the lawfulness of detention. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Mukantagara v. DHS*, 67 F.4th 1113, 1116 (10th Cir. 2023) (emphasizing that § 1252(b)(9) has a

---

[3] Although the effect of a removal order on this Court's habeas jurisdiction has not been briefed by the parties, the Court has an independent duty to assess its subject matter jurisdiction over § 2241 petitions. *Palma-Salazar*, 677 F.3d at 1038 n.3.

"'narrow' scope" (quoting *Regents of Univ. of Cal.*, --- U.S.----, 140 S. Ct. 1891, 1907 (2020))

and that "[a] claim only arises from a removal proceeding when the parties in fact are

challenging removal proceedings" (citing *Canal A Media Holding, LLC v. USCIS*, 964 F.3d

1250, 1257 (11th Cir. 2020))).  The Petition raises constitutional and statutory questions as to

Petitioner's detention, rather than the validity of the removal order.  Therefore, the Court retains

jurisdiction over the Petition despite the presence of a final removal order.

## II.    Petitioner's Allegations Regarding Medical Care

Petitioner is seven months pregnant and raises concerns about her ability to receive

adequate medical and prenatal care in the Otero detention facility.  In recent pleadings, including

in a signed affidavit accompanying the Motion to Expedite, Petitioner states that she has not been

evaluated by an OB/GYN or taken to a hospital while in the custody of ICE and that the

detention facility does not have the necessary equipment to conduct an adequate medical

examination.  **[Docs. 18 at 1–2; 19 ¶¶ 12–19; 19–4 ¶¶ 8, 10]**.  She also asserts that she is

experiencing pregnancy-related symptoms, including "severe abdominal pain, dizziness, near-

fainting, weakness, and inability to eat," that have increased in severity in recent days and weeks.

**[Docs. 19 at 4 ¶ 13; 19-4, ¶ 9]**.  Petitioner expresses fear that remaining in ICE custody will

result in permanent harm to herself and the fetus, including miscarriage, internal bleeding, or

"fetal distress."  **[Doc. 19-4 ¶ 11]**.  Petitioner states that she has received one ultrasound while in

custody and has received no additional prenatal monitoring.  **[*Id.* ¶¶ 6, 7]**.  She asserts that she

has requested additional ultrasounds and has been denied them, despite "medical staff agreeing"

that "one is necessary for fetal safety."  **[*Id.* ¶ 6]**.

As discussed above, challenges directed at the conditions of confinement are generally

not cognizable in habeas.  Here, Petitioner does not advance her allegations regarding medical

care as an independent basis for constitutional or statutory relief.  Rather, she raises those

6

concerns primarily in connection with her request to expedite these proceedings. **[***See generally***
Docs. 19, 19-2;** *see* **Doc. 19 at 4–5]**. Petitioner's allegations regarding inadequate medical care therefore fall outside the scope of the Court's habeas review and are not addressed on the merits here.

Respondents recently requested the opportunity to respond to Petitioner's new allegations regarding medical status asserted in the Motion to Expedite. **[Docs. 19, 21]**. Because the Court has determined Petitioner's legal claims must be dismissed on the merits, the Court believes a response would not serve any purpose but to delay the final resolution of the Petition. Therefore, the Court denies the Motion for Extension of Time to Obtain Medical Records **[Doc. 21]** as moot. Respondents will not be required to present further briefing regarding Petitioner's medical records.

That said, while the Court makes no findings as to the accuracy of Petitioner's allegations regarding medical care, the Court finds them concerning. The Court hopes and expects that, if they are true, that the appropriate Respondents will act promptly to ensure that Petitioner is receiving necessary medical care to prevent irreparable harm to her and her future child.

## III.    Petitioner's Habeas Claims

### a.    Statutory Authority for Petitioner's Detention

Respondents represent that Petitioner is detained pursuant to 8 U.S.C. § 1226(c), as amended and expanded by the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025). **[Doc. 17 at 11]**. Section 1226(c) mandates detention of any noncitizen[4] who is: (i) inadmissible under paragraph (6)(A), (6)(C), or (7) of 8 U.S.C. § 1182(a), and (ii) is "charged with, arrested for, [] convicted of, admits having committed, or admits committing acts which constitute the essential elements of" certain

---

[4]        This Order "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

listed theft-related offenses.  8 U.S.C. § 1226(c)(1)(E)(i)–(ii).

Petitioner does not contest the application of the second statutory condition — a charge, conviction, arrest, or admission in connection with a theft-related offense.  Indeed, Petitioner was arrested on charges for grand theft shortly before her transfer to federal immigration custody.  This fact plainly triggers § 1226(c)(1)(E)(ii).  Rather, she challenges the application of the first element — inadmissibility under 8 U.S.C. § 1182(a)(6)(A), (6)(C), or (7) — on the ground that she is lawfully present within the United States pending adjudication of her adjustment of status application.  **[Doc. 18 at 5–6]**.

Paragraph (6)(A) of section 1182(a) applies to "[noncitizens] present in the United States without being admitted or paroled" or individuals who "arrive[] in the United States without inspection."  8 U.S.C. § 1182(a)(6)(A).  Paragraph (6)(C) applies, broadly speaking, to noncitizens who seek to procure immigration or other legal benefits through fraud or willful misrepresentation of a material fact.  *Id.* § 1182(a)(6)(C).  Finally, paragraph (7) applies to noncitizens who lack a valid entry document "at the time of application for admission."  *Id.* § 1182(a)(7)(A)(i)(I).

The record indisputably shows that Petitioner entered the United States without valid entry documents at the time she applied for admission.  Upon entry to the United States on or about December 23, 2023, Petitioner was served with a Notice to Appear, charging her with violation of section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I), and stating that Petitioner "applied for admission into the United States" at the time of entry.  **[Doc. 1-1 (Notice to Appear)]**.

Petitioner does not contest the accuracy of this charge.  Rather, she asserts that her filing of a CAA adjustment application establishes her lawful presence in the United States pending adjudication.  **[Doc. 18 at 4–5]**.  In support of this proposition, Petitioner cites *Fernandez v. Mukasey*, 520 F.3d 965 (9th Cir. 2008), a non-binding decision that concerns a petition for review

8

on First Amendment grounds of a BIA decision denying cancellation of removal and does not address lawful presence under the CAA. This inapposite authority does not help Petitioner's claim.

In any event, the pendency of an application for adjustment of status does not negate a noncitizen's inadmissibility under 8 U.S.C. § 1182(a)(7). Section 1182(a)(7) attaches when a noncitizen lacks valid entry documents at the time of application for admission. *See DHS v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (citing 8 U.S.C. § 1182(a)(7)(A)(i)(I)). Nor does the fact that Petitioner was granted temporary parole under INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), cure inadmissibility under § 1182(a)(7). **[*See* Doc. 18 at 6]**. The relevant statutory provision provides that discretionary parole under INA § 212(d)(5) "shall not be regarded as an admission." 8 U.S.C. § 1182(d)(5). The statutory language is plain. *In re Ballard*, 526 F.3d 634, 638 (10th Cir. 2008) (where the statutory language is clear, the court "need not look beyond it"). A grant of discretionary parole under § 212(d)(5) does not confer admitted status on the grantee.

Accordingly, because Petitioner is inadmissible under 8 U.S.C. § 1182(a)(7) and has been charged with a qualifying theft-related offense, her detention is mandatory under 8 U.S.C. § 1226(c). Petitioner's detention is therefore expressly authorized — indeed, required — by Congress. To the extent that Petitioner seeks the relief of a bond hearing in the alternative to release, section 1226(c) provides for detention without the opportunity for bond. *See* 8 U.S.C. § 1226(c)(1) ("The Attorney General *shall* take into custody any alien . . . .") (emphasis added). Therefore, habeas relief is not available to Petitioner because her detention is required under § 1226(c).[5]

*** 

The Court notes that since the initiation of this proceeding, Petitioner has been issued a final

---

[5] Because the Court finds that Petitioner's detention is required under § 1226(c), the Court need not reach Petitioner's arguments concerning the application of § 1225(b).

order of removal.  Post-removal detention is generally governed by 8 U.S.C. § 1231(a)(2), which mandates detention "[a]fter entry of a final removal order."  *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)).  Although the parties have not briefed the effect of the removal order on the statutory basis for detention, the Court notes that § 1231(a)(2) would independently authorize Petitioner's detention.

### b.  Procedural and Substantive Due Process Claims (Counts I and IV)

Petitioner asserts that her continued detention violates the procedural and substantive protections of the Due Process Clause of the Fifth Amendment.  Petitioner bases this argument on her pending adjustment of status application and the fact that she is subject to pending criminal charges in Florida, which she alleges she is unable to defend while detained in New Mexico.  **[Doc. 1 at 15–18 ¶¶ 68–76; 21–22 ¶¶ 97–102]**.

Noncitizens subject to civil detention and removal under federal immigration law are entitled to due process of law under the Fifth Amendment.  *Demore*, 538 U.S. at 523; *Zadvydas*, 533 U.S. at 690.  The Fifth Amendment's procedural due process protections afford noncitizens an "opportunity to be heard at a meaningful time and in a meaningful manner." *de la Llana–Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks omitted). "Beyond this basic protection guaranteed by the Fifth Amendment, any alleged liberty interest must be created by statute or regulation."  *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001).

Petitioner alleges a protected due process right arising from her pending application for adjustment of status under the CAA.  **[Doc. 1 at 22 ¶ 100]**.  However, parallel proceedings for immigration relief do not alone expand the due process rights afforded by statute.  A claim of due process arises only if there is "a legitimate claim of entitlement" to a right. *Town of Castle Rock,*

*Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents*, 408 U.S. at 577). Adjustment of status, including under the Cuban Adjustment Act, is a discretionary form of relief and does not create a liberty or property interest protected by the Due Process Clause. *See Arambula-Medina*, 572 F.3d at 828 ("[I]n immigration proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary relief . . . .") (quoting *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004)). Absent a constitutionally protected liberty or property interest, Petitioner's due process claim grounded in her alleged rights under the CAA must fail. *See id.* (holding that a due process claim is contingent on the existence of a liberty or property interest). Further, Petitioner's application for adjustment under the CAA has since been denied. Therefore, any claim to a right that might have accrued under the CAA has dissolved.

Likewise, the fact that a detainee is simultaneously defending criminal charges does not confer an independent right to release from civil immigration detention or require additional process beyond that provided by statute. *See United States v. Romero*, 511 F.3d 1281, 1284 (10th Cir. 2008) (rejecting "the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right") (quoting *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)); *United States v. Sussman*, 444 F. App'x 302, 304 (10th Cir. 2011) (finding that "collateral adverse consequences" of the federal government's issuance of a detainer to a person detained in state custody did not "trigger due process protections"). Therefore, Petitioner's pending criminal proceedings do not expand upon the rights established by statute, and as discussed herein, Petitioner was afforded the rights accorded by statute, which do not include the opportunity for bond review.

To the extent Petitioner argues that she was not provided notice or an opportunity to contest her detention, it is true that noncitizens subject to mandatory detention may, generally, in

immigration proceedings, contest whether the statutory basis for detention applies to them. *See Matter of Joseph*, 22 I&N Dec. 799, 800 (1999); *see also Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 n.3 (3d Cir. 2013). This process is referred to as a *Joseph* hearing. *See Demore*, 538 U.S. at 514 n.3.

The record does not indicate whether Petitioner requested a *Joseph* hearing at the outset of her detention, though the failure to provide a *Joseph* hearing upon request may indeed constitute a procedural defect in underlying immigration proceedings. However, even assuming Petitioner did request and was denied a *Joseph* hearing, the Fifth Amendment does not mandate additional process beyond that necessary to determine whether detention is statutorily authorized, nor does it confer a constitutional right to a bond hearing or release from mandatory detention. *See Demore*, 538 U.S. at 523–31 (rejecting a due process challenge to mandatory detention under 8 U.S.C. § 1226); *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (rejecting the conclusion that the government is required to supply procedural protections beyond those imposed by statute or regulation).

Substantive due process — in the civil detention context, including immigration detention — protects against detention that is arbitrary, punitive, or otherwise not reasonably related to a legitimate governmental purpose. *See Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979) (pre-trial detention); *Dixit v. Fairnot*, No. 23-11436, 2025 WL 1733887, at *5 (11th Cir. June 23, 2025) (acknowledging the applicability of *Bell* to a Fifth Amendment challenge in the immigration detention context); *see also Singh v. Noem*, No. CIV 25-1110, 2026 WL 146005, at *39 (D.N.M. Jan. 20, 2026) (recognizing that a substantive due process claim may exist in an analogous context based on punitive confinement) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Allegations concerning discretionary immigration determinations, conditions of confinement,

collateral consequences of detention, or dissatisfaction with administrative processes, without more, do not suffice to establish a due process violation. *See Palma-Salazar*, 677 F.3d at 1035–36; *United States v. Sussman*, 444 F. App'x 302, 304 (10th Cir. 2011).

Petitioner does not plausibly allege that her confinement pending removal proceedings, (or following a removal order, pending removal), is arbitrary or excessive in relation to the United States' legitimate interest in effectuating removal, to suggest that Petitioner's detention is punitive as would violate the Fifth Amendment.[6] *See Acosta Ortega v. ICE*, No. 2:20-cv-00522, 2020 WL 4816373, at *5 (D.N.M. Aug. 19, 2020) ("The Government has a legitimate interest in enforcing immigration laws and detaining persons pending removal.") (citing *Jennings*, 583 U.S. at 286). Rather, the record reflects that Petitioner was detained pursuant to mandatory statutory authority and for approximately three and one-half months. Detention of this nature and duration falls within the "brief period necessary" to effectuate removal proceedings that the Supreme Court has held constitutionally permissible. *See Demore*, 538 U.S. at 523, 529–31. Accordingly, Petitioner's allegations do not plausibly suggest that her detention is punitive or otherwise violative of the Fifth Amendment.

Because Petitioner has not identified a protected liberty interest entitling her to additional process beyond that authorized by statute, her procedural due process claim fails. Moreover, where detention is statutorily authorized and reasonably related to the United States' legitimate interest in effectuating removal, and where no facts plausibly allege punitive or arbitrary confinement, no substantive due process violation arises.

---

[6] The Court does not suggest that detention could never become punitive or constitutionally problematic under different circumstances. However, as pled, Petitioner does not allege that the conditions or circumstances of her confinement, including any asserted neglect of medical needs, render the confinement punitive or otherwise unconstitutional.

13

c. **Petitioner's Remaining Habeas Claims (Counts II, III, V)**

Petitioner asserts that her continued detention violates the Administrative Procedure Act (Count II), and 8 C.F.R. §§ 236.23(d), 236.1(d), 241.4, 245.2(a)(4)(ii), under the *Accardi* doctrine (Count III).

Turning first to Petitioner's claim under the APA, the APA provides a cause of action only where there is no other adequate remedy in court. 5 U.S.C. § 704. As stated above, challenges to the fact or duration of immigration detention are cognizable in habeas and "must be brought in habeas." *See also Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). Because the relief Petitioner seeks — release from custody — is attainable through habeas corpus, the APA does not supply an independent cause of action. Additionally, the APA provides only for review of agency action that is final. 5 U.S.C. § 704. Immigration detention pending a decision on removal or removal does not constitute final agency action. *See Gamez Lira v. Noem,* No. 25-cv-855, 2025 WL 2581710, at *4 (D.N.M. Sept. 5, 2025); *Bhatia v. United States,* No. 16-cv-11, 2016 WL 6127799, at *3 (S.D. Miss. Sept. 19, 2016), *report and recommendation adopted,* 2016 WL 6126666 (Oct. 20, 2016); *Intriago-Sedgwick v. Noem*, No. 1:25-cv-01065-MIS-LF, 2025 WL 3688155, at *8 n.7 (D.N.M. Dec. 19, 2025) (PFRD). Accordingly, Petitioner's APA claim fails.

Petitioner also invokes the *Accardi* doctrine, arguing that DHS failed to comply with its own custody review regulations set forth in 8 C.F.R. §§ 236.1(d) and 241.4(d).[7] The *Accardi* doctrine holds that an agency must adhere to procedures required by binding regulations it has promulgated, and where an agency fails to do so, the resulting action may be invalid. *United*

---

[7]    Petitioner also alleges that her detention violates 8 C.F.R. § 236.23(d), which concerns USCIS's authority to terminate a grant of Deferred Action for Childhood arrivals—an immigration benefit Petitioner does not allege she received. Petitioner further cites 8 C.F.R. § 245.2(a)(4)(ii), asserting that it "preserves the pendency of an adjustment application." **[Doc. 1 at 21 ¶ 96]**. That regulation addresses the effect of a noncitizen's departure from the United States on a pending application for adjustment of status. Petitioner does not explain how either regulation applies to her detention or identify any procedure required by those provisions that DHS failed to follow.

*States ex rel. Accardi v. Shaugnessy*, 347 U.S. 260, 267–68 (1954); *Jordan v. Wiley*, 411 F. App'x 201, 211 (10th Cir. 2011) (citing *Accardi*, 347 U.S. at 268).

Petitioner has not shown that DHS failed to comply with procedures mandated by regulation. Section 241.4 implements 8 U.S.C. § 1231 and is entitled "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period." 8 C.F.R. § 241.4. Petitioner has not alleged that her continued detention has extended "beyond the removal period" so as to trigger the procedures set forth in § 241.4. Accordingly, she has not shown that DHS failed to comply with any procedures mandated by that regulation.

Subparagraph (d) of section 236.1, which implements 8 U.S.C. § 1226, governs "[a]ppeals from custody decisions." 8 C.F.R. § 236.1(d). The regulation permits a detainee to seek review of a custody or bond determination through the procedures specified therein. Where detention is mandatory under § 1226(c), however, there is no discretionary custody determination from which to seek administrative review. Because Petitioner's detention is not discretionary, § 236.1(d) does not afford her a right to administrative review, and she has identified no procedural protection guaranteed by the regulation that DHS failed to follow. Given that Petitioner has not established that either of the cited regulations applies to her detention, she has not shown a violation of any mandatory procedural requirement.

Finally, Petitioner asserts that her "arrest" by federal immigration authorities violated 8 C.F.R.§ 287.8(c)(2)(i)-(ii) under *Accardi*, ran afoul of the Fourth Amendment, and did not comply with 8 U.S.C. § 1357(a)(2). Each of these claims rests on a mistaken premise—that Petitioner was subject to arrest when she was transferred from local to federal immigration custody. Petitioner was already lawfully seized by local law enforcement upon her transfer to ICE custody. Her transfer to immigration authorities therefore did not constitute a new seizure or

arrest implicating the Fourth Amendment. *See, e.g.*, *United States v. Laville*, 480 F.3d 187, 196 (3d Cir. 2007) (transfer from local to ICE custody was not a "'new arrest' requiring an independent showing of probable cause"); *Coleman v. Gillespie*, 424 F. App'x 267, 270 (5th Cir. 2011) ("[T]ransfer of an arrestee from the custody of one officer to another does not effect a separate arrest or seizure[.]").  Similarly, the transfer did not constitute an "arrest" under 8 U.S.C. § 1357(a)(2), or 8 C.F.R. § 287.8(c)(2)(i)-(ii), so as to implicate the statutory and regulatory provisions cited by Petitioner. *See* 8 U.S.C. § 1357(a)(2) (setting forth requirements for warrantless arrests); 8 C.F.R. § 287.8(c)(2)(i)-(ii) (outlining "[g]eneral procedures" for arrests by immigration officers).  Petitioner's claims based on her "arrest" therefore fail.

## IV.    Petition for a Writ of Mandamus

Also before the Court is Petitioner's petition for a writ of mandamus compelling USCIS to adjudicate her Form I-485 adjustment of status application. **[Docs. 9, 11]**.  Petitioner's adjustment of status application was adjudicated on November 25, 2025, when USCIS denied the application. **[Doc. 19-2]**.  The requested relief is mooted by this disposition.

Petitioner relies on a screenshot of a case status page on USCIS' website suggesting that her application had been "reopened," notwithstanding the written Notice of Decision. **[Doc. 18 at 5]**.  The record, however, clarifies that the webpage entry resulted from an internal administrative error and does not represent the actual status of Petitioner's application. **[*See* Doc. 20-1]**.  The operative record, the Notice of Decision, **[Doc. 19-2]**, **[*see* Docs. 20-1 ¶¶ 12–15; 19-2],** confirms that USCIS has reached a determination on Petitioner's application.

## ORDER

It is hereby ORDERED that because the Petition for Writ of Habeas Corpus fails to present a legally cognizable claim for relief in habeas, the Petition **[Doc. 1]** is DENIED.

It is further ORDERED that:

- the Petition for Writ of Mandamus **[Docs. 9, 11]** is DENIED as moot.

- Respondents' Motion to Dismiss **[Doc. 17]** is GRANTED.

- Petitioner's Motion to Expedite **[Doc. 19**] is DENIED AS MOOT**.**

It is finally ORDERED that Respondents' Motion for Extension of Time to Obtain Medical Records **[Doc. 21]** is DENIED as moot.

*** 

Because Petitioner did not prevail in this action, she is not eligible for an award of attorney's fees under the Equal Access to Justice Act.  *See* 28 U.S.C. § 2412(d)(1)(A).

/s/_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE